**IN THE COURT OF APPEALS OF IOWA**

No. 20-1377
Filed May 26, 2021

**ROSS RICHARD LARSON,**
     Plaintiff-Appellant,

**vs.**

**ALEXIS B. STECH,**
     Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

A plaintiff appeals the dismissal of his negligence action for failure to show good cause for untimely service of the petition. **AFFIRMED.**

Steven C. Despotovich, West Des Moines, and Susan R. Stockdale, Ankeny, for appellant.

Brenda K. Wallrichs of Lederer Weston Craig PLC, Cedar Rapids, and Kent A. Gummert of Lederer Weston Craig PLC, Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

In this personal injury action, Ross Larson appeals the dismissal of his petition for failure to comply with Iowa Rule of Civil Procedure 1.302(5). He claims the judge who dismissed the case erred in "overruling" another judge who granted his request for more time to serve his petition on defendant Alexis Stech. Because Larson did not show good cause for his late service, we affirm the dismissal.

## I. Facts and Prior Proceedings

Larson alleges that he suffered serious injuries in a two-car accident on November 17, 2017. He filed a claim with Farm Bureau Financial Services, the insurance company for Stech, the other driver.[1] On November 6, 2019, Farm Bureau extended Larson a settlement offer: payment of his medical bills through July 2019, plus $5000. Larson retained an attorney, and on November 12, 2019, he filed a civil petition seeking compensation from Stech.

On February 17, 2020, the district court issued an order notifying Larson that it did not appear he had served Stech with original notice of the petition within ninety days of its filing as required by rule 1.302(5).[2] The order gave Larson fourteen days to either (1) file a document with the clerk of court showing that he had completed service on the defendant in compliance with rule 1.302(5) or (2) file a motion with a supporting affidavit stating the good cause for his failure to timely

---

[1] Stech is a resident of Kansas.

[2] This stock order was entitled "Order Setting Deadline of Service." That title wrongly hinted that the ninety-day deadline set in rule 1.302(5) was negotiable. In actuality, the order was only looking for proof of past timely service, not inviting a motion for extension of the time for service.

serve the defendant. The order warned that if Larson did not comply with either of those options by March 2, the court would dismiss his case without prejudice.

But Larson bypassed both options. Instead, he filed a motion for additional time on February 27, 2020. He asked the court to extend the deadline to file a return of service for thirty days. In support of his motion, Larson explained that negotiations with Farm Bureau had "slowed" but were "ongoing." He also pointed to the fact that Stech lived in another state. The motion did not use the phrase "good cause."

In a March 6, 2020 order, the district court granted the request for more time, giving Larson another thirty days to serve Stech. The order noted "negotiations with Farm Bureau are ongoing but the parties are cooperating," and plaintiff's counsel "is optimistic the case can be settled prior to serving the Defendant and further burdening the Court system unnecessarily." The order also stated that "dismissal of the case at this point (after the statute [of limitations] has run) would cause undue harm to Larson and his effort to arrive at a fair settlement."

On April 6, 2020, Larson filed a second motion for additional time, as well as a motion for alternative service. The motions revealed that Larson's counsel had not hired a process server until March 31, 2020. The motion stated that efforts to serve Stech were "commenced" but not "completed." The motion also asserted "the current pandemic has made communication between the parties and activities surrounding this case, including Service of Process, to be difficult and delayed."

The district court granted the motions, allowing Larson to complete service by ordinary mail to Stech, ordinary mail to Farm Bureau, or publication. The district

court also extended the service deadline until June 15, 2020. Under those alternative service options, Larson managed to serve Stech.

Then in August 2020, Stech filed a pre-answer motion to dismiss. She claimed Larson did not have good cause for failing to serve her within ninety days of filing the petition. Larson resisted, citing his compliance with the previous district court orders and complications with service stemming from "the shutdown of many business[es] due to COVID-19 concerns." The district court granted Stech's motion to dismiss, holding that the initial motion to extend the service deadline was "improvidently granted."

Larson appeals the district court's order granting Stech's motion to dismiss and asks to reinstate his petition.

## II. Scope and Standards of Review

"We review decisions by the district court to grant a motion to dismiss for correction of errors at law." *Rucker v. Taylor*, 828 N.W.2d 595, 598 (Iowa 2013); *see* Iowa R. App. P. 6.907. Generally, courts do not consider facts outside the pleadings in evaluating a motion to dismiss. *Rucker*, 828 N.W.2d at 598. But we make an exception when a party bases its motion on an alleged failure to provide timely service. *Id.* Thus, in cases like this, "a court is permitted to consider facts outside the pleadings." *Id.* at 599. When the district court makes findings of fact, they are binding on appeal if supported by substantial evidence. *Carroll v. Martir*, 610 N.W.2d 850, 857 (Iowa 2000). But neither the district court's application of legal principles nor its legal conclusions bind our decision on appeal. *Id.*

Larson lobbies for a different standard. He contends: "When an extension of time for service of notice has been granted upon motion of a plaintiff, the review

of the ruling on that motion should be for abuse of discretion." He cites no authority for that proposition and we find none. Even when considering a second, revised ruling, we review to correct legal error. *Id.*

### III. Discussion

Larson focuses on his initial win in the district court—the March 6 order giving him another month to complete service of process. He contends that order was not a "mistake" and should not have been "corrected" by a different judge. We reject his contention for two reasons.

First, we have long recognized that a district court has the power to correct its own perceived errors, "so long as the court has jurisdiction of the case and the parties involved." *McCormick v. Meyer*, 582 N.W.2d 141, 144 (Iowa 1998) ("We adhere to the general rule that a district court judge may review and change a prior interlocutory ruling of another district judge in the same case."). Until the court enters a final order, it can correct any prior rulings. *Carroll*, 610 N.W.2d at 857. "The authority to do so is particularly appropriate [when] the initial ruling is made ex parte." *Id.* "In short, a party has no vested interest in an erroneous ruling." *Id.* Without question, the district court could revisit the March 6 extension of time for service.

Second, the district court's correction was correct. A plaintiff must serve the defendant within ninety days after filing the petition. Iowa R. Civ. P. 1.302(5). A court will extend the time for service if the party can show "good cause" for failing to provide timely service. *Id.* If a plaintiff fails to provide timely service, and cannot show good cause, then the court must dismiss the action without prejudice, either

upon a defense motion or the court's own initiative. *Id.*; *see Meier v. Senecaut*, 641 N.W.2d 532, 541–42 (Iowa 2002).

To show good cause, "the plaintiff must have taken some affirmative action to effectuate service of process upon the defendant or have been prohibited, through no fault of his own, from taking such an affirmative action." *Id.* at 542 (quoting *Henry v. Shober*, 566 N.W.2d 190, 192–93 (Iowa 1997) *superseded by rule as stated in Dickens v. Assocd. Anesthesiologists, P.C.*, 709 N.W.2d 122, 127 (Iowa 2006)). "[G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct and the plaintiff has acted diligently in trying to effect service, or there are understandable mitigating circumstances." *Wilson v. Ribbens*, 678 N.W.2d 417, 421 (Iowa 2004). What is not good cause? The case law lists "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service." *Id.* As the second district court judge decided, Larson did not satisfy the good-cause standard to excuse the untimely service of process.

But circling back to the March 6 order, Larson contends the issue of good cause is "moot," because the court granted him more time to serve Stech. He relies on a passage from *Meier* explaining that the amended rule of civil procedure enables a defendant "who has been served beyond the ninety-day period, *in the absence of an order for an extension*, to move to dismiss the petition based on unjustified delay in completing service of process." 641 N.W.2d at 542 (discussing rule 49(f), which is now rule 1.302(5)). Larson uses this language to conclude that,

because he obtained an extension (albeit 115 days after he filed his petition), his untimely service was not presumptively abusive.[3]

Stech disputes Larson's mootness argument. She emphasizes that Larson made no attempts at service within ninety days of petitioning. Nor did he seek to extend the ninety-day deadline until seventeen days after it had expired. We agree with Stech. Under the ninety-day deadline in the rule, Larson's untimely service *was* presumptively abusive. The court's March 6 order extending the time for service, issued twenty-five days after the ninety-day deadline expired, did not render the good-cause question moot.

The remaining question is whether substantial evidence supported the district court's finding in October 2020 that inadequate justification existed for Larson's delay in service. Larson argues the March 6 ruling was reasonable based on the "totality of the circumstances," even if that first judge did not make an express finding of good cause. Despite not mentioning the pandemic in his February 27 motion, Larson argues on appeal: "Given the fact that the COVID-19 virus was on everyone's minds in February of 2020 and many people were self-isolating, the first judge properly exercised her discretion to grant the motion either with or without a showing a 'good cause.'" Beyond the virus, Larson contends that

---

[3] Under an earlier rule, courts employed a two-step analysis. *Id.* If service was delayed, the court first decided if the delay was "presumptively abusive." *Id.* If the court found abusive delay, it then decided if the delay was justified. *Id.* Under the revised rule, the first step went away. "By allowing the court to dismiss a petition after ninety days, the rule now establishes the standard for presumptive abuse." *Id.* Courts need only decide whether plaintiff has shown good cause for the delay. *Id.*

ongoing settlement negotiations, his late hiring of an attorney, and Stech's out-of-state residence added to good cause for the belated service.

We are unpersuaded by Larson's arguments. All the alleged mitigating circumstances, taken together, do not show Larson had good cause for the delay in service. We first consider his COVID-19 excuse. Larson cites a news website for the proposition that the first case was reported in the United States in late January 2020. Yet, one month later, he did not rely on the emerging public health crisis when seeking more time to serve original notice on Stech. And the court did not mention COVID-19 as a factor in granting the extension for return of service.[4]

The March 6 order *did* mention ongoing settlement negotiations as one of the reasons why extending the time for service was proper.[5] But even if the parties had been communicating, "[t]he existence of ongoing settlement negotiations is not a sufficient reason for delaying service." *See Henry*, 566 N.W.2d at 193; *Berding v. Menards, Inc.*, No. 20-0078, 2020 WL 5230460, at *3 (Iowa Ct. App. Sep. 2, 2020); *but cf. Rucker*, 828 N.W.2d at 603 ("[T]he action by the insurance

---

[4] We recognize that on March 31, 2020, the Iowa Supreme Court issued a supervisory order entitled "In the Matter of Ongoing Provisions for Coronavirus/COVID–19 Impact on Court Services" that relaxed the deadlines for service of original notices. It stated: "For all original notices to be served in accordance with Iowa Rules of Civil Procedure 1.302, 1.305, or 1.306, and where the deadline for the original notice falls between March 23, 2020, and April 16, 2020, the serving party is granted through May 18, 2020, to complete service (30 days after Iowa's State of Public Health Disaster Emergency is set to expire). *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (Mar. 31, 2020). But this supervisory order did not apply to Larson's case because the deadline for the original notice at issue was February 10, 2020 (ninety days after he filed the petition on November 12, 2019).

[5] Stech points out that Larson was never engaged in settlement negotiations with Farm Bureau. What happened is that Farm Bureau extended a single settlement offer on November 6, 2019. But Larson never responded.

representative in this case in continuing to negotiate with Rucker's attorney with knowledge that Rucker did not plan to timely serve the petition made it inequitable for the Taylors to subsequently seek dismissal of the case . . . .").

In seeking the extension, Larson also pointed to his late hiring of an attorney. But the fact that Larson waited until five days before the two-year statute of limitations expired to retain counsel was not good cause for violating rule 1.302(5). That kind of "neglect" or "ignorance of the rule or its burden" does not justify late service of the petition.

Finally, Larson contends his efforts at service were complicated by Stech living in another state. But he offers no evidence that Stech tried to avoid service or was absent from her Kansas home during normal hours or for unusually long stretches. *See Meier*, 641 N.W.2d at 543. The truth is that Larson did not employ a process server until March 31—fifty days after the ninety-day deadline expired. So any failed attempts by the process server to deliver the petition to Stech were not the source of the delay in service.

Because the district court could correct the March 6 order, and aptly decided Larson did not have good cause for missing the service deadline in rule 1.302(5), dismissal of the petition was proper.

**AFFIRMED.**